IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUIS LIMON, *et al.,* § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. G-07-0274 |
| § | |
| BERRYCO BARGE LINES, L.L.C., *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

This opinion addresses the following motions:

1. Third-party defendant Garber Brothers, Inc. moved for reconsideration of this court's order denying the motion for summary judgment against the claims asserted by the plaintiffs, Louis Limon, Manual Olivarez, and Porfirio Montalvo ("the plaintiffs"), and the third-party plaintiff Berryco Barge Lines ("Berryco"). (Docket Entry No. 174). Berryco responded, (Docket Entry No. 176), and Garber Brothers replied, (Docket Entry No. 177).

2. Third-party defendant Inland Barge Rentals, Inc. moved for summary judgment against the plaintiffs and the third-party plaintiff Berryco. (Docket Entry No. 158). Berryco responded and supplemented its response, (Docket Entries No. 171, 175); the plaintiffs joined in Berryco's response, (Docket Entry No. 172); and Inland Barge replied, (Docket Entry No. 173).

Based on the motions, responses, and replies; the summary judgment record; and the applicable law, Garber Brothers' motion for reconsideration is granted and its motion for summary judgment is granted in part and denied in part. The motion is granted as to Garber Brothers' contention that it chartered the OB-819 barge bareboat to Brammer Engineering and as to Garber Brothers' liability for claims based on the OB-819's unseaworthiness. It is denied as to Garber Brothers' liability for negligence. Similarly, Inland Barge's motion for summary judgment is granted in part and denied in part. The motion is granted as to Inland Barge's claim that it chartered

the OB-819 barge bareboat to Garber Brothers and as to Inland Barge's liability for claims based on the OB-819's unseaworthiness. It is denied as to negligence.

The reasons for these rulings are explained below.

I.   **Background**[1]

On January 9, 2007, Limon, Olivarez, and Montalvo, employees of defendant Unit Texas Drilling, were passengers in a work boat, the M/V NIKKI D, owned by Berryco Barge Lines, L.L.C. The work boat was traveling to a drilling rig in Sabine Lake owned by Kaiser–Francis Oil Company. While traveling to the rig, the M/V NIKKI D struck an unlit barge. The M/V NIKKI D bounced off the barge and struck an unmanned manifold platform owned by SL Production Company, L.L.C. and maintained by Kaiser–Francis. (Docket Entry No. 148, at 1–2). For the purpose of these motions, the parties agree that this court should assume that the work boat struck the "dumb"[2] barge, OB-819.[3] Third-party defendant Inland Barge owned the OB-819. Inland Barge had leased the barge to Garber Brothers, another third-party defendant in this suit. Garber Brothers had in turn leased the barge to Brammer Engineering, which was using the barge when it was struck by the work boat, the M/V NIKKI D. (*Id.* at 2–3). The plaintiffs were injured in the collision.

The plaintiffs sued Kaiser–Francis, SL Production, Brammer Engineering, Berryco, Garber Brothers, and Inland Barge. Berryco filed third-party complaints against Garber Brothers and Inland Barge Rentals for contribution.

---

[1] The relevant facts are set out in detail in this court's initial summary judgment memorandum and opinion, (Docket Entry No. 148).

[2] A "dumb" barge lacks power or crew.

[3] Garber Brothers and Inland Barge question whether barge OB-819 had any involvement in the incident but did not move for judgment on this issue. (Docket Entries No. 174, at 1; 158, at 2).

2

### A. The Garber Brothers Motions

On April 30, 2010, Garber Brothers moved for summary judgment, arguing that it is not liable for the injuries or the collision because it bareboat chartered the barge OB-819 to Brammer Engineering and because it did not operate the tugboat that moored the barge. Garber Brothers also argued that it had no duty to light the barge and is not otherwise responsible for any injuries arising from the barge's operation. (Docket Entry No. 130). This court denied the motion on the basis of what the summary judgment record then included. Whether Garber Brothers bareboat-chartered the barge to Brammer Engineering depended on whether Inland Barge bareboat-chartered the barge to Garber Brothers. The summary judgment evidence on that issue was that: (1) Inland Barge stated that it "rented" the barge; (2) Garber Brothers did not insure the barge; (3) Garber Brothers conducted on-hire and off-hire surveys; and (4) the Garber Brothers General Manager, Ronnie Totten, testified that Garber Brothers did "[n]ot necessarily" control "the whole barge with no limitations whatsoever." (Docket Entry No. 148, at 2–3). The memorandum and opinion on Garber Brothers' motion stated that this summary-judgment evidence was "insufficient to determine, as a matter of law, the precise nature of the charter agreement between Inland Barge and Garber Brothers for barge OB-819." (Docket Entry No. 148, at 12). This court did note that if Inland Barge bareboat- chartered the barge to Garber Brothers, then — based on the lease agreement between Garber Brothers and Brammer Engineering — Garber Brothers bareboat-chartered the barge to Brammer Engineering.

Summary judgment as to liability was also denied. Even if Garber Brothers bareboat-chartered the barge, that could still give rise to liability for injuries caused by the barge's unseaworthy condition if that condition existed before the charter began. *See Nat G. Harrison*

*Overseas Corp. v. Am. Tug Titan*, 516 F.2d 89, 96 (5th Cir. 1975). Garber Brothers claimed that the barge was unseaworthy because it was not properly equipped with lighting, in violation of Inland Navigation Rules. Because neither party identified specific Navigation Rules requiring barges like the OB-819 to be lit, and because the record was unclear as to "whether or when the industry custom as well as the rules imposed on the tug owner or operator the responsibility to install lights on the barges as opposed to ensuring that the lights were used as appropriate," summary judgment as to liability was denied. (Docket Entry No. 148, at 16, 15–16).

In its motion for reconsideration, Garber Brothers identifies additional evidence that it asserts shows that, as a matter of law, it bareboat-chartered the barge from Inland Barge Rentals. This additional evidence includes the following:

1.  Totten testified that Inland Barge "owns the barge" and that Inland Barge bareboat-chartered the barge to Garber Brothers. (Docket Entry No. 174, Ex. A, Totten Depo. at 15–16, 21).

2.  Inland Barge stated in a response to a request for admission that it bareboat-chartered the barge to Garber Brothers. (*Id.*, Ex. D, Request for Admission No. 12).

3.  Inland Barge's president, Byron Carline, stated in an affidavit that (1) Inland Barge bareboat-charted the barge, (2) Garber Brothers received complete control and possession of the barge, (3) Garber Brothers received the barge with no additional provisions, crew, fuel, or supplies, and (4) Garber Brothers was responsible for storing the OB-819 when it was not in use. (*Id.*, Ex. E, Byron Carline Aff.).

Garber Brothers argues that this evidence shows that it bareboat-chartered the OB-819. As to liability, Garber Brothers argues that while the owner of a barge leased on a bareboat-charter basis owes a duty to provide a seaworthy vessel, that duty is only owed: (1) to a seaman who is a crew member of the vessel; (2) to a "Sieracki" seaman; (3) when goods are carried by the vessel; and (4) to the charterer. Garber Brothers argues that because the plaintiffs' claims do not fall within these categories, there is as a matter of law no basis for liability to the plaintiffs and also no basis for

4

liability to third-party plaintiff Berryco.

B.      **The Inland Barge Motion**

Inland Barge filed a motion for summary judgment raising the same arguments Garber Brothers raises in its motions for summary judgment and for reconsideration. Inland Barge has submitted additional evidence in support of its contention that it bareboat-chartered the OB-819, including the following:

1. Totten and Carline testified that Garber Brothers installed a tank and compressor on the barge without requesting permission from Inland Barge so that Garber Brothers could have "a certain amount of tank barges in its fleet. (Docket Entry No. 158, Ex. B, Totten Depo. at 9–10; Ex. C, Carline Depo.at 12–13).

2. Totten testified that Garber Brothers did not need permission from Inland Barge to send the OB-819 "out on a job" or to subcharter the OB-819. (*Id.*, Ex. B, Totten Depo. at 77).

3. Totten testified that Garber Brothers stored the barge at its slip and paid for its use even though it was not using the barge. (*Id.* at 76).[4]

C.      **Berryco's Response**

In response to these motions, Berryco argues that the evidence is still insufficient to establish a bareboat charter as a matter of law. Berryco emphasizes that the summary judgment evidence is as consistent with a time charter as a bareboat charter. As to liability, Berryco responds that even under a bareboat charter of the barge, Garber Brothers can still be held liable for its negligence in chartering an unlit barge and for negligence *per se* for failing to comply with the General Prudential Rule of the Inland Navigation Rules and other regulations requiring vessels to be lit.

---

[4]Berryco points out that there is testimony from Carline that he would take the OB-819 "off rent" when it was not being used by Garber Brothers. Berryco argues that this refutes the contention that Garber Brothers continued to pay for the OB-819 without regard to whether it used the barge gainfully or not. Carline's testimony, however, shows that Inland Barge took the OB-819 off rent after Garber Brothers had stated that it did not need the barge and the parties agreed to end the charter. (Docket Entry No. 158, Ex. C, Carline Depo., 11–12).

5

## II. The Applicable Legal Standards

### A. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* The nonmovant must do more than show that there is "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id.* at 255; *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010)**.**

> **B.** **Charter Agreements**

"A 'charter' is an arrangement whereby one person (the 'charterer') becomes entitled to the use of the whole of a vessel belonging to another (the 'owner')." *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993). There are three principal forms of charter agreements: the time charter, the voyage charter, and the bareboat charter. 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 11-1 (4th ed. Westlaw 2010). Time charters and voyage charters are non-demise charters; bareboat charters are demise charters. "The distinction between the demise and non-demise charters depends on the degree of control retained by the owner of the vessel." *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993).

Under a time charter, the owner retains possession and control of the vessel. The owner also provides the crew, remains responsible for operating expenses, and makes repairs as needed. *Walker*, 995 F.2d at 81. *But see In re Mobro Marine, Inc.*, No. 3:02-CV-471-J-20-TEM, 2004 WL 3222743, at *2–3 (M.D. Fla. Dec. 20, 2004) (court held that a bareboat-charter agreement existed despite the fact that the owner of the vessel made repairs to it when requested by the charterer). A voyage charter is similar to a time charter but exists only when the charterer rents the vessel for a single voyage. 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 11-1 (4th ed. Westlaw 2010). Time charterers and voyage charterers, as non-demise charterers, are "not liable for claims of negligence of the crew or for the unseaworthiness of the vessel." *Forrester*, 11 F.3d at 1215. The owner of the vessel remains liable for these claims.

7

"If a shield [from liability] is possible, it can be provided only by a valid bareboat charter." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 182 (5th Cir. 1981). Under a bareboat charter, "[t]he vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term 'bareboat')." *Forrester*, 11 F.3d at 1215. A bareboat charter is "tantamount to, though just short of, an outright transfer of ownership." *Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85, 91 (5th Cir. 1981) (quoting *Guzman v. Pichirilo*, 369 U.S. 698, 700, 82 S. Ct. 1095, 1096 (1962)). A bareboat-charter agreement need not be in writing. *Agrico Chem. Co.*, 664 F.2d at 91. A bareboat charterer is an owner *pro hac vice* and "has unrestricted use of the vessel." *Kerr–McGee Corp. v. Ma-Ju Marine Servs., Inc.*, 830 F.2d 1332, 1342 n.11 (5th Cir. 1987) (citing *Trussell v. Litton Sys., Inc.*, 753 F.2d 366, 368 (5th Cir. 1984)). As a result, the bareboat charterer becomes responsible for any negligence of the crew and unseaworthiness of the vessel. *Forrester*, 11 F.3d at 1215.

Bareboat-charter agreements typically contain provisions addressing delivery of the vessel, redelivery at the end of the term, subchartering, restrictions on use, salvage, and responsibility to make repairs, purchase insurance, and indemnification. 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 11-3 (4th ed. Westlaw 2010). The bareboat charterer typically is required to carry vessel insurance, indemnity insurance, and crew insurance. *Agrico Chem. Co.*, 664 F.2d at 92. "Though not essential, a survey of the vessel on delivery and redelivery is customary to determine the condition of the vessel at the beginning of the [bareboat] charter and its condition at the end, so as to fix responsibility for and limit disputes about damage during the charter." *Id*.

Agreements for the use of a barge are typically bareboat charters, as barges lack power and often have no crew. *Id*. at 91. But an owner may charter a barge and provide a tow, in which case

8

the owner remains in control of the barge. *Id*. "The burden placed on the party seeking to establish a demise charter 'is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship.'" *Martin v. Walk, Haydel & Assocs., Inc.*, 742 F.2d 246, 248–49 (5th Cir. 1984) (citing *Guzman*, 369 U.S. at 699, 82 S. Ct. at 1096)

A bareboat charterer may charter a vessel from its original owner and then bareboat charter that vessel to another party. *See, e.g.*, *Bosnor S.A. de C.V. v. Tug L.A. Barrios*, No. H-81-2460, 1984 WL 1428, at *4–5 (S.D. Tex. Oct. 1, 1984). Neither a time charterer nor a voyage charterer can bareboat charter its vessel to another party. A bareboat charter requires the transfer of full possession and control of the vessel to the charterer. *Walker*, 995 F.2d at 81. Neither a time charterer nor a voyage charterer has full possession and control of the vessel that it is chartering and therefore cannot bareboat charter that vessel to another.

C.   **The Warranty of Seaworthiness**

The owner of the chartered vessel has an obligation to provide a seaworthy vessel. The warranty of seaworthiness is implied in a bareboat charter agreement. 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 11-3 (4th ed. Westlaw 2010). To state a cause of action for unseaworthiness, a plaintiff must allege that his injury was caused by a defective condition of the ship or its equipment. 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-25 (4th ed. Westlaw 2010). The duty of seaworthiness is absolute. *Id*.

A bareboat charter does not necessarily free a vessel's owner from liability. *Baker*, 656 F.2d 173. In *Baker*, the court determined that no valid bareboat charter existed but "that even such a charter would not have released it from its liability as owner for the unseaworthiness of its vessel." *Id.* at 182. The court pointed out that the lower courts have generally agreed that the owner of a

9

vessel, even after it bareboat chartered a vessel, "still remains liable for injuries caused by defects in the vessel that existed before the commencement of the charter." *Id*. (citing *Nat G. Harrison Overseas Corp. v. Am. Tug Titan*, 516 F.2d 89, 96 (5th Cir.), *modified per curiam*, 520 F.2d 1104 (1975); *Hamilton v. Canal Barge Co., Inc.*, 395 F. Supp. 978, 988 (E.D. La. 1975); *Solet v. M/V Capt. H.V. Dufrene*, 303 F. Supp. 980, 984 (E.D. La. 1969)). "[A] seaman may have recourse in personam against the owner of an unseaworthy vessel, without regard to whether the owner or bareboat charterer is responsible for the vessel's condition." *Baker*, 656 F.2d at 184. "The allocation of ultimate liability should be the responsibility of the owner and charterer, who 'can sort out which between them will bear the final cost of recovery'" through indemnity or contribution. *Id*. (citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225 (5th Cir. 1975)). In *Farnsworth v. Basin Marine, Inc.*, the court held that "the appropriate defendant in an unseaworthiness case is the person who had operational control of the ship at the time the condition was created or the accident occurred." No. Civ. A. 97-3091, 1998 WL 259972, at *1 (E.D. La. May 20, 1998).

"The warranty of seaworthiness exists in favor of seamen, goods carried by the vessel, and certain maritime workers — so called "Sieracki seamen" — who are not covered by the Longshore and Harbor Workers' Compensation Act. Vessel owners also warrant seaworthiness in chartering their vessel." 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5-9 (4th ed. Westlaw 2010); *see also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959) (noting that the doctrine of seaworthiness serves to protect only crew members and a small class of shore-workers); 1 SCHOENBAUM, *supra*, § 6-27 ("The warranty of seaworthiness is a powerful doctrine, but it is a duty owed to a narrow class of maritime workers — those who can claim "seaman" status under the law. Other persons who come aboard a vessel, such as passengers

and visitors, are not seamen and cannot claim the benefit of the warranty.").

## III. Analysis

### A. The Charter Agreement between Inland Barge and Garber Brothers

The undisputed evidence in the expanded summary judgment record shows that Inland Barge and Garber Brothers agreed to a bareboat charter. In addition to the summary judgment evidence from the earlier motion filed by Garber Brothers, showing that it "leased the barge" and conducted on-hire and off-hire surveys, *Agrico Chem. Co.*, 664 F.2d at 92, Garber Brothers and Inland Barge have produced additional evidence showing that the parties agreed that Garber Brothers would have control over OB-819. *See Forrester*, 11 F.3d at 1215 ("The distinction between the demise and non-demise charters depends on the degree of control retained by the owner of the vessel."). Inland Barge's president, Byron Carline, testified that Garber Brothers received complete control and possession of the barge. (Docket Entry No. 174, Ex. E, Byron Carlisle Aff.). Garber Brothers chartered the barge without additional provisions, crew, fuel, or supplies. *See Martin*, 742 F.2d at 248 ("The test [of a demise charter] is one of 'control'; if the owner retains control over the vessel . . . the charter is not a demise; if the control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise."); *Walker*, 995 F.2d at 861 ("Under a bareboat charter . . . the vessel is transferred without crew, provisions, fuel, or supplies, i.e., 'bareboat.'"). Garber Brothers did not need permission from Inland Barge to send the OB-819 on a job or to subcharter it. During the charter, Garber Brothers stored the barge and paid Inland Barge regardless of whether the barge was being used. (Docket Entry No. 158, Ex. B, Totten Depo. at 77; Docket Entry No. 174, Ex. E, Byron Carlisle Aff.); *see Torch*, 148 F.3d at 427 ("When the factual situation is not otherwise clear, the assumption of

11

possession and control by the charterer may be evidenced by the charterer paying for use of the vessel "without regard to whether the charter uses the vessel gainfully or not.").

The undisputed evidence also shows that Garber Brothers could make improvements on the barge for its own purposes without permission; Garber Brothers installed a tank and compressor on the barge without requesting permission from Inland Barge to increase the fleet of tank barges. (*Id.*, Ex. B, Totten Depo. at 9–10; Ex. C, Carline Depo. at 12–13). While the summary judgment evidence also shows that the parties did not have a written agreement for bareboat charter and that Garber Brothers did not insure the barge, neither is required for a bareboat charter. *See Agrico Chem. Co.*, 664 F.2d at 92 (noting only that bareboat charterers typically carry insurance); *St. Paul Fire and Marine Ins. Co. v. Vest Transp. Co., Inc.*, 666 F.2d 932, 939 (5th Cir. 1982) (noting that bareboat charter agreements "need not be in writing").

Berryco emphasizes that when Totten was asked whether Inland Barge rented the barge to Garber Brothers "with no limitations whatsoever," Totten responded "[n]ot necessarily." (Docket Entry No. 133-2, Ex. B, Totten Depo. at 15–16). Berryco's argument is that if the charter had been bareboat, Garber Brothers, as owner *pro hac vice*, would have "unrestricted use of the vessel" and no limitations. *Kerr–McGee Corp.*, 830 F.2d at 1342 n.11. However, bareboat-charter agreements may include some restrictions on use. Such restrictions "do not weigh against a finding of a demise charter, because such provisions are typical in [bareboat charter] agreements." *Wills v. One Off, Inc.*, Civ. No. 08-11086-JLT, 2010 WL 1427502, at *5 (D. Mass. Apr. 8, 2010) (citing 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 11-3 (4th ed. 2004)). The restrictions that Totten referred to — limits on weight and on use in "rough waters"—do not defeat bareboat-charter status because they are not inconsistent with possession and control.

"[C]ontracts for the mere use of a barge are usually bareboat." *Agrico Chem. Co.*, 664 F.2d at 91. Though there were limited restrictions on how Garber Brothers could use the barge, in light of the overwhelming evidence of a bareboat charter, Totten's testimony does not raise a fact issue as to whether Inland Barge and Garber Brothers agreed to a bareboat charter.

Citing two cases from this circuit, Berryco also argues that the summary judgment evidence is equally consistent with a time charter. These cases, however, did not involve a dispute over whether there was a time charter or a bareboat charter, and do not provide authority for Berryco's contention that a fact issue exists as to whether Inland Barge and Garber Brothers agreed to a bareboat charter.

Berryco first cites *Nicor Supply Ships Assocs. v. Gen. Motors Corp.*, 876 F.2d 501 (5th Cir. 1989), to argue that installations on a vessel do not establish a bareboat charter. Berryco points to the statement in *Nicor* that "[a] time charterer has a direct proprietary interest in physical property that it adds to, has the legal right to remove, and will, as a matter of economic reality reclaim from a leased vessel." *Id.* at 506. The court made this statement in the context of determining whether the plaintiff — who the parties agreed was a time-charterer — had a contractual or proprietary right to remove a structure it welded to a chartered vessel. Whether the charter was a time charter or a bareboat charter was not at issue. This decision does not support Berryco's contention that the summary judgment evidence does not provide a basis to find a bareboat charter.

Berryco also cites the district court's statement in *Randall v. Chevron U.S.A., Inc.*, 788 F. Supp. 1398, 1404 (E.D. La. 1992) that "the time charterer . . . directs the movement of the vessel." Berryco argues that the control Garber Brothers had over the barge does not establish a bareboat charter. The district court's statement reads in full:

13

> General maritime law treats a demise charterer as a vessel owner, termed *pro hac vice*, because the demise charterer obtains full possession and control of the vessel, such that it mans and supplies the vessel. Conversely, in a time charter, the vessel owner retains possession and control and crews the vessel; the time charterer simply directs the movement of the vessel.

*Id.* The summary judgment evidence in the present case shows that in addition to having control over the movement of the vessel, Garber Brothers "manned" and supplied the vessel.[5] Neither *Nicor* nor *Randall* provides a basis to deny summary judgment.

The overwhelming weight of the undisputed evidence in the present record shows that Inland Barge and Garber Brothers agreed to a bareboat charter.

**B.     Unseaworthiness**

Under the case law, Inland Barge and Garber Brothers, as the *pro hac vice* owners of the barge, may be liable for injuries caused by the barge's unseaworthy condition, assuming that condition existed before the charter began. *See Nat G. Harrison Overseas Corp.*, 516 F.2d at 96; *Hamilton*, 395 F. Supp. at 988; *Solet*, 303 F. Supp. at 984; *Farnsworth*, No. Civ. A. 97-3091, 1998 WL 259972, at *1 ("[T]he appropriate defendant . . . is the person who had operational control of the ship at the time the condition was created or the accident occurred."). This liability, however, is limited. Whether Garber Brothers or Inland Barge may be liable as bareboat charterers turns on whether the plaintiffs were seamen or Sieracki seamen.

The undisputed evidence shows that the plaintiffs were not seamen or Sieracki seamen.

---

[5]Berryco also cites a statement in *Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, No. 06 Civ. 3123(CSH), 2008 WL 4449353 (S.D.N.Y. Sept. 29, 2008) that "a bareboat or time charterer who sub-charters the vessel to another . . ." and argues that the ability to subcharter does not establish a bareboat lease. Whether the charter was a time charter or a bareboat charter was not at issue and this decision does not provide authority for Berryco's contention that the summary judgment evidence does not provide a basis to find a bareboat charter.

"Seamen" is a term of art. *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 342, 111 S. Ct. 807, 112 L.Ed.2d 866 (1991). A seaman is a ward of the admiralty court, *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S. Ct. 997, 8 L.Ed.2d 88 (1962), and a member of a ship's company, *Yamaha Motor Corp. USA v. Calhoun*, 516 U.S. 199, 213, 116 S. Ct. 619, 133 L.Ed.2d 578 (1996). "The key to seaman status is [an] employment-related connection to a vessel in navigation." *Wilander*, 498 U.S. at 353. Sieracki seamen are individuals who perform work onboard vessels traditionally performed by seamen and who are not covered by the Longshore and Harbor Workers' Compensation Act. *See Broussard v. Great Creation Shipping Ltd.*, 410 F. Supp. 2d 498, 499 (E.D. La. 2005). Limon, Olivarez, and Montalvo all testified that they were employed by Unit Texas Drilling for land based drilling operations. (Docket Entry No. 158, Ex. A., Limon Depo. at 24, 44; Ex. E, Olivarez Depo., 26; Ex. F, Montalvo Depo. at 21). Berryco does not argue or identify summary judgment evidence showing that the plaintiffs were seamen. Inland Barge and Garber Brothers are entitled to summary judgment that they are not liable for breaching a warranty of seaworthiness because no such warranty extended to the plaintiffs.

**C.    Negligence**

Courts have held that the owner of a bareboat vessel may be liable *either* for breaches of the warranty of seaworthiness *or* for negligence, provided that the basis for liability is the vessel's condition before charter. *See Kerr–McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973) ("While there appear to be few cases dealing with the question, those in which the issue has been raised hold that the owner of a vessel under a demise charter is liable only for unseaworthiness or negligence that pre-exists the charter") (citing *Ramos v. Beauregard, Inc.*, 423 F.2d 916 (1st Cir. 1970)); *Vitozi v. Balboa Shipping Co.*, 163 F.2d 286 (1st Cir. 1947); *In re New York Dock Co.*, 61 F.2d 777 (2d

15

Cir. 1932)); *In re Marine Sulphur Queen*, 460 F.2d 89, 101 (2d Cir. 1972) ("[A]n owner-demisor is generally only liable where the injury results from unseaworthiness or negligence which existed prior to the delivery of the vessel to the demise charterer."). Inland Barge and Garber Brothers appear to assume that because the warranty of seaworthiness extends only to seamen, any general duties a vessel owner might owe before entering into a bareboat charter also only extend to seamen. The warranty of seaworthiness, however, is different from common-law negligence duties. The warranty of seaworthiness is grounded in the vessel owners' "'fundamental duty to provide its crew members with a reasonably safe means of boarding and departing from the vessel"; it is "'an absolute, nondelegable duty'"; and it is "irrespective of 'fault or use of due care.'" *Landers v. Bollinger Amelia Repair, L.L.C.*, 2010 WL 5023236, at *2 (5th Cir. Dec. 9, 2010) (quoting *Florida Fuels v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993)). Inland Barge and Garber Brothers have identified no authority holding that a vessel owner's duties of ordinary care with respect to a barge are limited to seamen. Based on the current record, Inland Barge and Garber Brothers have not shown that they are entitled to summary judgment as to negligence.

**IV.    Conclusion**

Garber Brothers's motion for reconsideration is granted and its motion for summary judgment is granted in part and denied in part. (Docket Entry No. 174). The motion is granted as to Garber Brothers's assertion that it chartered the barge bareboat to Brammer Engineering and as to Garber Brothers's liability for claims based on the OB-819's unseaworthiness. It is denied as to negligence. Similarly, Inland Barge's motion for summary judgment, (Docket Entry No. 158), is granted in part and denied in part. It is granted as to Inland Barge's assertion that it chartered the barge bareboat to Garber Brothers and as to Inland Barge's liability for claims based on the OB-

16

819's unseaworthiness, and denied as to the negligence claim against Inland Barge.

SIGNED on March 7, 2011, at Houston, Texas.

                                                      Lee H. Rosenthal
                                      United States District Judge