# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS LIMON, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-0274 |
| | § | |
| BERRYCO BARGE LINES, L.L.C., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The defendants in this case assert an indemnification claim against a party sued in a prior suit by the same plaintiffs who filed this suit. That party prevailed against the same plaintiffs in that prior suit. The issue in the present case is whether issue preclusion applies to prevent the defendants from asserting the indemnification claim.

Luis Limon and Manuel Olivarez, the plaintiffs in both lawsuits, were injured when a vessel transporting them to a drilling rig collided with an unlit barge and a manifold platform. In the first lawsuit, *Limon, et al v. Double Eagle Marine L.L.C.*, Civil Action No: 4:09-cv-0044, Limon and Olivarez sued Double Eagle, a tugboat-rental company, alleging that it negligently moored the barge to the manifold platform. Double Eagle moved for summary judgment on all the plaintiffs' claims and prevailed. In this lawsuit, the plaintiffs did not sue Double Eagle. Instead, the plaintiffs sued Kaiser–Francis Oil Company and SL Production Company, L.L.C., the owners of the manifold platform the ship hit; Brammer Engineering, the barge users; and Berryco, the owner and operator of the ship transporting the plaintiffs. These defendants filed third-party complaints against Double Eagle under Rule 14(a), seeking contribution for any recovery obtained by the plaintiffs against

them.[1]  In its motion to dismiss, Double Eagle argues that the third-party complaints are barred by issue preclusion because the first lawsuit established that Double Eagle is not liable for the plaintiffs' injuries.  (Docket Entry No. 154).  The third-party plaintiffs responded, (Docket Entry Nos. 156, 157); Double Eagle replied, (Docket Entry No. 162), and the third-party plaintiffs surreplied, (Docket Entry No. 164).  This court converted Double Eagle's motion to dismiss into a motion for summary judgment and gave the parties leave to supplement the record.  (Docket Entry No. 179).  Berryco supplemented the record, (Docket Entry No. 189).

Based on the motions, responses, and replies; the parties' attachments; and the applicable law, Double Eagle's motion for summary judgment is denied.[2]  The parties' arguments are analyzed below.

I.    **Factual Background**

On January 9, 2007, Luis Limon and Manuel Olivarez, Jr. were on a work boat, the M/V NIKKI D, owned by defendant Berryco Barge Lines.  The work boat was traveling to a drilling rig in Sabine Lake owned by Kaiser–Francis Oil Company.  While traveling to the rig, the M/V NIKKI D, piloted by Captain Steve Turrentine, struck an unlit barge being used at the time by Brammer Engineering.  The M/V NIKKI D bounced off the barge, the OB-19, and struck an unmanned manifold platform owned by SL Production Company, L.L.C. and maintained by Kaiser–Francis.  (Docket Entry No. 142, at 1–2).

---

[1] The plaintiffs have also sued Duphil, Inc.; Steve's Marine, Inc.; Inland Barge Rentals, Inc.; and Garber Brothers, Inc. These defendants did not file a third-party complaint and are not relevant to this motion.

[2] Based on this ruling, Berryco's motion for leave to supplement the record, (Docket Entry No. 200),and Double Eagle's motion for a protective order, (Docket Entry No. 178), are denied as moot.

Four of the defendants filed third-party complaints under Federal Rule of Civil Procedure 14(a)(1). These defendants/third-party plaintiffs are Kaiser–Francis, SL Production, Brammer, and Berryco. Kaiser–Francis and SL Production owned the drilling platform struck by the M/V NIKKI D; Brammer was using the barge struck by the M/V NIKKI D for its drilling operations; and Berryco owned and operated the M/V NIKKI D. The third-party complaints named Double Eagle as the defendant. (Docket Entry Nos. 145; 155). Double Eagle provides towing services and tugboat rentals. Brammer entered into a Master Time Charter Agreement with Double Eagle to use its tugboats to support drilling operations. (Docket Entry No. 145, ¶ 2). Double Eagle supplied Brammer tugboats under this agreement, including the MISS SHARLEE and the MISS JUK. (*Id.*).

The Master Time Charter Agreement between Brammer and Double Eagle stated that "the entire operation, navigation, management, control, performance and uses of each vessel shall be under the sole and exclusive command of and actually be accomplished by [Double Eagle] as an Independent Contractor." (*Id.*). The third-party complaints allege that under this Agreement, "it was Double Eagle's responsibility to safely navigate tugboats and barges attached to their tugboats for use in support of Brammer's operations which included the proper mooring of any barges." (*Id.*).

The logbook entries for the MISS SHARLEE indicate that it "moved" the OB-819 barge on January 8, 2007, the day before the incident that caused injuries to Limon and Olivares. But the parties dispute the extent to which the MISS SHARLEE moved the OB-819 on January 8. Double Eagle contends that on January 8, the MISS SHARLEE did not moor the OB-19 to the drilling platform struck by the M/V NIKKI D the next day. Instead, according to Double Eagle, the MISS SHARLEE merely adjusted the barge's position. The third-party plaintiffs claim that the MISS

SHARLEE moored the barge to the drilling platform on January 8 and is liable for Limon's and Olivarez's injuries.

In their third-party complaints, the third-party plaintiffs asserted causes of action against Double Eagle for: (1) negligence and negligence *per se*; (2) violation of the *Pennsylvania* Rule; (3) contribution and indemnity; and (4) breach of charter agreement. The third-party plaintiffs seek to recover from Double Eagle any amounts they are found liable to pay Limon and Olivarez in the present suit.

In the prior lawsuit Limon and Olivarez filed arising from the same accident, *Limon et al. v. Double Eagle Marine, L.L.C.*, Civ. A. No. H-09-444, Double Eagle was dismissed on summary judgment.[3] Double Eagle sought summary judgment on the basis that the plaintiffs had failed to raise a fact issue as to whether Double Eagle owned or operated the OB-819 or moored the OB-819 to the location where it was struck. The district court presiding over that case examined the summary judgment record and concluded that deposition testimony and vessel logs "sufficiently demonstrate[d] to the court that Double Eagle has met its initial burden to show that it did not move the barge to the location where it was moored on the night of the accident." (Docket Entry No. 154, Ex. A, Summary Judgment Opinion, at 4–5). The court reasoned that the plaintiffs' evidence, consisting of "testimony that Double Eagle moved the barge the day before the accident and also moved similar barges around this time period," presented no more than "merely conjecture" that Double Eagle had moored the barge to the location where it struck the next day and did not "rise to the level of 'specific facts' needed to overcome the motion for summary judgment." (*Id.* at 5). The

---

[3] The prior suit also involved a third plaintiff, Porfirio Montalvo. Montalvo has been dismissed from this litigation. (Docket Entry No. 16).

4

court granted the motion for summary judgment and dismissed the plaintiffs' claims against Double Eagle, with prejudice. Double Eagle asserts that this grant of summary judgment precludes the third-party plaintiffs from suing it for contribution or indemnity in this case.

The third-party plaintiffs in the present case do not dispute that the prior litigation arose from the same incident and injuries. The third-party plaintiffs point out that they were not parties to that litigation, limiting preclusion. The third-party plaintiffs also argue that they have discovered new evidence not available in the prior case. That evidence is the Global Positioning System (GPS) data from the MISS SHARLEE's Automatic Identification System (AIS) transponder. According to the third-party plaintiffs, the GPS data shows that the MISS SHARLEE stopped at the drilling platform on January 8, 2007 for a significant period, which they argue is consistent with the time needed to moor the barge. (Docket Entry No. 156, at 3). AIS data produced showed that another Double Eagle tugboat, the MISS JUK, was maneuvering around the drilling platform on January 8, 2007. The third-party plaintiffs allege that the MISS JUK was in fact in dry-dock at that time. The third-party plaintiffs allege that "representations made by Double Eagle's counsel to Kaiser–Francis indicate that the AIS transponder from the MISS JUK was removed while it was in dry-dock during the relevant times . . . and placed on the MISS SHARLEE, which until then was not equipped with such a transponder, without changing the vessel identity information it transmitted." (Docket Entry No. 156, at 3). The GPS data was apparently not available when Limon and Olivarez were pursuing their suit against Double Eagle.

Double Eagle has moved to dismiss the third-party complaints on the basis that the claims are barred by collateral estoppel, or issue preclusion. (Docket Entry No. 154). The third-party plaintiffs responded, (Docket Entry Nos. 156, 157). The third-party plaintiffs argue that: (1) a

5

motion to dismiss is an improper vehicle to assert collateral estoppel; (2) even if the issues in the third-party complaints are identical to the issues in Double Eagle's litigation with Limon and Olivarez, collateral estoppel does not apply because there is no privity between Limon and Olivares and the third-party plaintiffs; and (3) the discovery of new evidence makes the application of collateral estoppel inappropriate and unfair. Double Eagle replied, (Docket Entry No. 162), and the third-party plaintiffs surreplied, (Docket Entry No. 164). This court converted Double Eagle's motion to dismiss into a motion for summary judgment and gave the parties leave to supplement the record. (Docket Entry No. 179). Berryco supplemented the record, (Docket Entry No. 189).

## II. The Applicable Legal Standards

### A. A Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Twombly*, 550 U.S. at 562–63 ("*Conley*'s 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1974).

In considering a Rule 12(b)(6) motion to dismiss, a court generally must limit itself to the pleadings, with an exception. In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss. The Fifth Circuit made it clear that such consideration is limited "to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498–99). When other "matters outside the pleadings" are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so. *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999); *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988). A court exercises this discretion by determining whether the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate decision. *Isquith*, 847 F.2d at 193 n.3 (quoting 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (1969)). If the court decides to consider such material, then the court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56. FED. R. CIV. P. 12(d). If the court accepts matters outside the pleading and converts the motion to dismiss into one for summary judgment, the court must give the parties notice of the changed status of the motion and a "'reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.'" *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 38 (2d Cir. 1990) (quoting former FED. R. CIV. P. 12(b)).

7

The Fifth Circuit has held that "'generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. Dec. 23, 2008) (quoting *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005)). The Fifth Circuit has recognized two exceptions. First, "when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Ins. Co. v. Stewart Title Co.*, 20 F.3d 1362 (5th Cir. 1994). Second, the Fifth Circuit has held that there is no reversible error when the trial court treats a Rule 12(b)(6) motion based on res judicata as a motion for summary judgment. *Risby v. United States*, No. Civ. A. 3:04-CV-1414-H, 2006 WL 770428, at *5 (N. D. Tex. Mar. 7, 2006) (citing *Moch v. E. Baton Rouge Parish Sch.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)).

Double Eagle asked that this court treat its motion to dismiss as one for summary judgment. (Docket Entry No. 162, at 1 (citing *Moch v. E. Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)). By separate order, this court converted Double Eagle's motion to dismiss into a motion for summary judgment and gave the parties leave to supplement the record.

### B. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See*

*Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### C. Issue Preclusion

The Fifth Circuit has set out the following elements for applying issue preclusion, or collateral estoppel:

> Collateral estoppel precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the

9

> determination of the issue in the prior action was a necessary part of the judgment in that action.

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) (footnotes and citation omitted). "Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings." *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995) (citation omitted). Issue preclusion may apply even if the claims and the subject matter of the suits differ. *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999) (citation omitted). In addition, "'[u]nlike claim preclusion, the doctrine of issue preclusion may not always require complete identity of the parties.'" *Id.* (alteration in original) (quoting *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990)). But "[w]hile complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation." *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005) (citing *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989)).

The Fifth Circuit has held that issue preclusion may be invoked against a nonparty to the original litigation under the following circumstances:

> First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party . . . . Second, a nonparty who controlled the original suit will be bound by the resulting judgment . . . . Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit.

*Terrell*, 877 F.2d at 1270 (citing *Freeman v. Lester Coggins Trucking Co.*, 771 F.2d 860, 864 (5th Cir. 1985)). As to "adequate representation," the Fifth Circuit has stated "[t]he concept of 'adequate representation' does not refer to apparently competent litigation of an issue in a prior suit by a party

10

holding parallel interests; rather, it refers to the concept of virtual representation." *In re Hinsley*, No. 97-20967, 1998 WL 414302, at *9 (5th Cir. July 15, 1998). Virtual representation "'demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues.'" *Id.* (quoting *Freeman*, 771 F.2d at 860).

In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Supreme Court addressed "virtual representation" as an exception to the general rule that issue and claim preclusion do not apply to nonparties. *Id.* at 891 ("We granted *certiorari* . . . to resolve the disagreement among the Circuits over the permissibility and scope of preclusion based on 'virtual representation.'"). The Court noted that "[t]he application of claim and issue preclusion to nonparties . . . runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* at 892–93 (quoting *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996)). The Court rejected "virtual representation" as a basis for applying preclusion to a nonparty and described six categories of "recognized exceptions" to the general rule against nonparty preclusion. *Id.* at 893. These categories are as follows:

1. when a nonparty "agrees to be bound by the determination of issues in an action between others";

2. "a variety of pre-existing 'substantive legal relationships' between the person to be bound and a party to the judgment";

3. when, "in certain limited circumstances," a nonparty was "adequately represented by someone with the same interests who [wa]s a party";

4. when a nonparty "assume[d] control" over the prior litigation;

11

5. "when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication"; and

6. when a statutory scheme "expressly foreclose[s] successive litigation by nonlitigants."

*Id.* at 893–95.

While the Court referred to the six categories as "established categories," *id.* at 895, it also recognized that they "could be organized differently" and stated that "[t]he list . . . is meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy." *Id.* at 893 n.6. Although the Supreme Court in *Taylor* disapproved of the term "virtual representation," the Court approved the three categories of adequate representation that had been used by the Fifth Circuit — a nonparty who has succeeded to a party's interest in property, a nonparty who controlled the original suit, and a nonparty whose interests were represented adequately by a party in the original suit. *Id.* at 891 n.3, 904 ("Although references to 'virtual representation' have proliferated in the lower courts, our decision is unlikely to occasion any great shift in actual practice. Many opinions use the term 'virtual representation' in reaching results at least arguably defensible on established grounds.").

In two post-*Taylor* decisions addressing the identity-of-interest prong of the nonparty preclusion test, the Fifth Circuit did not decide whether district courts should stop using the terms "privity" or "virtual representation." In *Cuauhtli v. Chase Home Fin. LLC*, the Fifth Circuit recognized that *Taylor* had "articulated six exceptions to the identical party rule." No. 08-10637, 2009 WL 188072, at *1 (5th Cir. Jan. 27, 2009). And in *Frank C. Minvielle LLC v. Atlantic Refining Co.*, the Fifth Circuit noted that *Taylor* "reaffirmed" that "the parties need not actually be identical." 337 F. App'x 429, 435–36 (5th Cir. July 24, 2009). While the Fifth Circuit has not

articulated the relationship between *Taylor* and the Fifth Circuit's previous use of "virtual representation," courts have observed that under both, "the underlying consideration is the same: there must be a sufficiently close relationship between a party and a nonparty to merit the application of nonparty preclusion." *United States ex rel. Kennard v. Comstock Res., Inc.*, Civ. A. No. 9:98-CV-266, 2009 WL 765002, at *7 n.7 (E.D. Tex. Mar. 23, 209); s*ee also Davis v. Gusman*, Civ. A. No. 09-7195, 2010 WL 1727825, at *12 (W.D. La. Apr. 13, 2010) (describing the similarities between *Taylor* and Fifth Circuit precedent). The Supreme Court has held that adequate representation requires that, "at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (internal citations omitted).[4] Similarly, the Fifth Circuit's virtual representation test requires the "existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues," *Hinsley*, 1998 WL 414302, at *9.

**III.   Analysis**

The fact issues in the prior suit filed by Limon and Olivares against Double Eagle and in this suit filed by Limon and Olivares against other defendants, who have in turn filed a third-party complaint against Double Eagle, are the same: whether Double Eagle moored the barge to the location where it was struck by the vessel in which Limon and Olivares were passengers. In maritime cases, a third-party plaintiff may implead a third-party defendant under Rule 14(a) to seek

---

[4] The Supreme Court also held that "adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Taylor*, 553 U.S. at 900. Neither party disputes whether the third-party plaintiffs had notice of the prior Double Eagle litigation.

contribution or indemnity. *See In re Katrina Canal Breaches Consol. Litig.*, 2009 WL 1564813, at *3 n.2 (E.D. La. May 29, 2009) (citing *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 110–11 (1974); *Seal Offshore, Inc. v. Am. Standard, Inc.*, 777 F.2d 1042, 1045 (5th Cir. 1985); *see also Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486 (7th Cir. 2001).[5] The issue for the nonparty preclusion Double Eagle seeks is whether, in the prior suit, Limon and Olivarez adequately represented the interests of the third-party plaintiffs in seeking a finding of liability against Double Eagle. Of the six categories of recognized exceptions to the identity-of-parties requirement the Supreme Court recognized, this is the only one that applies.

Double Eagle argues that Limon and Olivarez provided adequate representation because, like the third-party plaintiffs in this case, they wanted to establish Double Eagle's liability for their injuries. But courts have held that such a similarity in interests is insufficient for nonparty preclusion. *See Gulf Island-IV, Inc. V. Blue Streak–Gulf Island Operations*, 24 F.3d 743, 747 (5th Cir. 1994) ("'A non-party . . . is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative. This requires more than a showing of parallel interests — it is not enough that the non-party may be interested in the same questions or proving the same facts.'" (citing *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992)); *Kinnison v. Humana Health Plan of Tex., Inc.*, 2008 WL 2446051, Civ. A. No. C-07-381, at *10 (S.D. Tex. June 17, 2008) ("While Prest and Humana have parallel interests with regards to Plaintiff's claims

---

[5] Double Eagle argues that under the Supreme Court's decision in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), third-party plaintiffs cannot seek contribution or indemnity against a party whose liability has been determined. *McDermott* does not address whether issue preclusion prevents third-party plaintiffs from pursuing contribution claims against a nonparty who was a defendant in a prior case filed by the same plaintiff and who obtained a ruling in that case that the plaintiff had not shown liability. In *McDermott*, the question was how a plaintiff's settlement "with less than all of the defendants in an admiralty case should affect the liability of nonsettling defendants." *Id.* at 207. The Court held that when one defendant of many settles with a plaintiff, the liability of the remaining nonsettling defendants is calculated based on the proportionate responsibility for the plaintiff's injuries without regard to the amount of the settlement. *Id.* The instant motion raises different issues. Double Eagle is not one several defendants who settled with Limon and Olivarez, and the third-party plaintiffs were not parties to Double Eagle's litigation with Limon and Olivarez.

against them, such a convergence of interests is not sufficient to create a relationship for privity."); *United Rentals, Inc. v. Maritrend, Inc.*, No. Civ. A. 00-3600, 2002 WL 230816, at *5 (E.D. La. Feb. 13, 2002) (noting that "it is insufficient to show that the parties have parallel interests, that the first suit was completely litigated, or even that the same attorney was used in both suits."). Under Fifth Circuit precedent, virtual representation requires that the third-party plaintiffs are successors-in-interest; controlled the previous litigation; or had "an express or implied legal relationship" under which the plaintiffs were accountable to the third-party plaintiffs. *In re Hinsley*, 1998 WL 414302, at *9. Under *Taylor*, adequate representation requires that, "at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Taylor, 553 U.S. at 900. In this case, adequate representation requires that Limon and Olivarez understood themselves "to be acting in a representative capacity" for the third-party plaintiffs or that "the original court took care to protect the interests" of the third-party plaintiffs. Double Eagle has neither identified nor submitted evidence of these two requirements.

The Fifth Circuit has held that the following relationships are the types contemplated by the doctrine of virtual representation that survives *Taylor*: "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee." *Kinnison v. Humana Health Plan of Tex., Inc.*, 2008 WL 2446051, Civ. A. No. C-07-381, at *10 (S.D. Tex. June 17, 2008). There is no legal relationship between Limon and Olivarez and the third-party plaintiffs analogous to the relationships the Fifth Circuit has found will support nonparty issue preclusion. To the contrary, Limon, Olivarez, and the third-party plaintiffs are adversaries.

15

Double Eagle argues that under Rule 14(c)(2), the third-party plaintiffs' complaint against Double Eagle is a demand for "judgment in the plaintiff's favor against the third-party defendant" and the "action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." Double Eagle emphasizes that because the third-party plaintiffs have demanded judgment in Limon's and Olivarez's favor, the third-party complaints are a reassertion of Limon's and Olivarez's claims against Double Eagle, which is barred by res judicata because the parties are identical to the prior litigation. But the third-party plaintiffs have brought their third-party complaints under Rule 14(a), not Rule 14(c).

"Federal Rule of Civil Procedure 14(c) was designed to expedite and consolidate admiralty actions by permitting a third party plaintiff to demand judgment against a third party defendant in favor of the plaintiff." *Durgin v. Crescent Towing & Salvage, Inc.*, 2002 WL 1789776, at *2 (E.D. La. July 31, 2002). "As a consequence, the plaintiff is then required to assert his claims directly against the third-party defendant." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 910 (5th Cir. 2001). As a leading treatise notes, "[t]his is to be distinguished from practice under Rule 14(a), which does not automatically establish a direct relationship between plaintiff and the third-party defendant upon the assertion of a third-party claim." 6 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 1465, 565 (3d ed. 2010). Under Rule 14(a), the defending party "may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." A third-party complaint brought by defendants does not assert the rights of the plaintiffs, though Rule 14(a)(3) allows the plaintiff to "assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff." The

issue is not whether issue preclusion would apply if the third-party plaintiffs had asserted claims against Double Eagle under Rule 14(c). Double Eagle is sued under Rule 14(a).

Finally, Double Eagle argues that claim preclusion, or res judicata, should apply because it has already litigated its liability for Limon's and Olivarez's injuries, the third-party plaintiffs were aware of this litigation and did not join, and the third-party plaintiffs waited until nine months after a court found that Double Eagle was not liable for these injuries to file their third-party complaint. Res judicata, however, gives primacy to the third-party plaintiffs' interest in not being bound by a judgment to which they were not a party. The Supreme Court has held that res judicata emphasizes "the fundamental nature of the general rule that litigant is not bound by a judgment to which she was not a party." *Taylor*, 553 U.S. at 888. There are circumstances in which res judicata bars a nonparty with knowledge of an action from pursuing a claim arising out of that action. Section 62 of the Restatement of the Law (Second) on Judgments states:

> A person not a party to an action who has a claim arising out fo the transaction that was the subject of the action, and who knew about the action prior to the rendition of judgment therein, may not thereafter maintain an action against a party to the original action if:
>
> (1) The enforcement of the claim against that party would result in subjecting him to inconsistent obligations or in a determination of his rights and duties that is incompatible with the judgment in the original action; *and*
>
> (2) The claimant so conducted himself in relation to the original action that the party against whom the second action is brought:
>
>> (a) Was reasonably induced to believe that the claimant would make no claim concerning the transaction or that the claimant would govern his conduct by the judgment in the original action; *and*
>>
>> (b) Justifiably abstained from employing procedures, such as joinder of the claimant or commencement of

17

> another action in which the claimant was made a
> party, that could have determined the claim.

*Id.* at 124.

Double Eagle does not argue, or identify evidence, that the third-party plaintiffs induced Double Eagle to believe that they would not seek contribution or indemnity against it in this suit. Nor does Double Eagle argue or identify evidence, that it abstained from filing a third-party complaint against the parties who have sued it in the present case because of their conduct with respect to the prior suit. Double Eagle points out that the third-party plaintiffs made no attempt to consolidate the two suits relating to the same incident, but neither did Double Eagle. Nor did Double Eagle make any effort to bring the third-party plaintiffs into the prior litigation. In the comments to § 62, the *Restatement (Second) on Judgments* concludes that the party hoping to benefit from res judicata bears the burden of ensuring its application by joining other potential claimants:

> Given the premise that a person is ordinarily free to assert his claim by separate action, and given the opportunities for joinder of third persons known to have claims arising from the transaction through the necessary party and other joinder rules . . . denying a claimant opportunity to maintain his action is warranted only in compelling circumstances.
>
> Thus a person should not be denied the opportunity simply because the opposing party may have to relitigate a matter already adjudicated with another. Nor is it sufficient that the claimant may have silently stood by while the prior action was pending, aware that he would not be bound unless made a party and aware also that he might benefit if the judgment was favorable to his position in the controversy . . . . The rules of procedure generally put the burden of joinder on the person who wishes to obtain the benefits of the rules of preclusion, requiring him to bring third parties involved in the transaction. Hence, as between a silent bystander and the party to the litigation, the latter properly bears the risk that the original litigation will not terminate the controversy.

cmt. a, 126–27. The third-party plaintiffs' failure to join in Double Eagle's lawsuit, and their delay in asserting their claims against Double Eagle, do not justify the application of claim preclusion.

**III. Conclusion**

Double Eagle's motion to dismiss and for summary judgment based on preclusion is denied.

SIGNED on March 11, 2011, at Houston, Texas.

                                                Lee H. Rosenthal
                                      United States District Judge