IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS LIMON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-0274 |
| | § | |
| BERRYCO BARGE LINES, L.L.C., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In this admiralty case, one of the defendants, Berryco Barge Lines, L.L.C., seeks summary judgment dismissing the claims asserted against it by the plaintiffs, Luis Limon, Manuel Olivarez, Jr., and Porfirio Montalvo, and by the defendant cross-claimants, Kaiser–Francis Oil Company; SL Production Company, L.L.C.; and Brammer Engineering, Inc. The plaintiffs and the cross-claimants allege that Berryco is liable for injuries the plaintiffs sustained in an allision between a Berryco vessel on which they were passengers and an unlit barge.[1] (Docket Entry No. 110).

The plaintiffs worked for Unit Texas Drilling. Unit Texas Drilling had entered into a contract with Kaiser-Francis Oil Company to drill an offshore well. Kaiser–Francis assigned the drilling contract to Brammer Engineering, which hired Duphil, Inc., a construction company, to transport workers to the drill site. Duphil in turn subcontracted to have Berryco provide two vessels, the M/V NIKKI D and the M/V FINLEY RYAN, and captains to pilot the vessels, "including but

---

[1] "'An allision is a collision between a moving vessel and a stationary object.'" *Mid-South Towing Co. v. Exmar Lux*, 418 F.3d 526, 528 n.1 (5th Cir. 2005) (quoting 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 14-2 (4th ed. 2004)).

not limited to Captain Mike Dennis and Captain Steve Turrentine." (Docket Entry No. 96, at 2).[2] Captain Turrentine was piloting the M/V NIKKI D when the allision occurred. The plaintiffs were passengers.

In this lawsuit, the plaintiffs alleged that Berryco was negligent by: (1) entrusting the M/V NIKKI D to Captain Turrentine, who was piloting the vessel while intoxicated; (2) failing to implement proper safety procedures; and (3) "such other negligent acts which will be shown at trial." (Docket Entry No. 31). After discovery, Berryco moved for summary judgment on three grounds: (1) Captain Turrentine was not Berryco's employee or borrowed servant and Berryco is not vicariously liable for his negligence; (2) Berryco's negligence did not cause the plaintiffs' injuries and to the extent the plaintiffs seek to hold Berryco vicariously liable for the negligence of others, it is not liable because it was not in privity with them and had no knowledge of their negligence; and (3) all cross-claims against Berryco derive from the plaintiffs' claims and should be dismissed because Berryco is not liable to the plaintiffs. (Docket Entry No. 77). Kaiser–Francis, Brammer Engineering, SL Production, the plaintiffs, and the plaintiffs' subrogee, Liberty Mutual Fire Insurance Company, responded to Berryco's summary judgment motion. (Docket Entry Nos. 96, 98, 99). Berryco replied, (Docket Entry No. 100); Kaiser–Francis, Brammer Engineering, and SL Production surreplied, (Docket Entry No. 102); and Berryco responded to the surreply, (Docket Entry No. 106).

---

[2] In the initial complaint, the plaintiffs also named Hacko, Inc. as a defendant because the plaintiffs believed that Hacko also owned the M/V NIKKI D. (Docket Entry No. 1). Hacko moved for partial summary judgment, (Docket Entry No. 43), on the basis that it did not own, operate, or provide the crew for the M/V NIKKI D. This court granted that motion, and dismissed Hacko from the lawsuit. (Docket Entry Nos. 43, 44).

Based on the motion, responses, and replies; the evidence in the record; and the applicable law, Berryco's motion for summary judgment is denied. The reasons are explained below.

## I. The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* The nonmovant must do more than show that there is "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id.* at 255; *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010)**.**

II.    **Whether Berryco Is Entitled to Summary Judgment on the Basis that the Captain Was Neither Its Employee Nor Borrowed Servant**

Berryco argues that it is not liable for Captain Turrentine's alleged negligence in piloting the M/V NIKKI D when the allision occurred. The parties agree that Berryco chartered the M/V NIKKI D and the M/V FINLEY RYAN to Duphil to transport the plaintiffs to the drill site, and that Berryco hired Captain Turrentine to pilot one of the vessels. The parties also agree that Berryco did not "bareboat" charter the vessel.[3] The issue is whether there are disputed fact issues material to determining whether Captain Turrentine was an employee of Berryco or a borrowed servant.

A.    **The Applicable Law**

"While multiple factors may be considered whether a vessel's master and crew are employees under maritime law, the most important factor is 'control.'" *Borque v. D. Huston Charter Servs., Inc.*, 525 F. Supp. 2d 843, 847 (S.D. Tex. 2007) (citing *United States v. W.M. Webb, Inc.*, 397 U.S. 179, 192 (1970)). "[I]n most maritime relationships, the workers enjoy discretion that is usually broad if measured by land-based standards—a discretion dictated by the seafaring nature of the activity." *Webb*, 397 U.S. at 192. "[E]xcept where there is nearly total relinquishment of control through a bareboat , or demise, charter, the owner may nevertheless be considered, under maritime

---

[3] Under a bareboat charter, "[t]he vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term 'bareboat')." *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993). A bareboat charter is "tantamount to, though just short of, an outright transfer of ownership." *Agrico Chem. Co. v. M/V Ben W. Martin*, 664 F.2d 85, 91 (5th Cir. 1981) (quoting *Guzman v. Pichirilo*, 369 U.S. 698, 700, 82 S. Ct. 1095, 1096 (1962)).

4

law, to have sufficient control to be charged with the duties of an employer." *Id.* This does not mean "that if there is not a demise charter, there must be an employer–employee relationship. Rather it means . . . if there is not a demise charter, there *may* be an employment relationship even if there is very little control." *Dobrydnia v. Farwest Fisheries, Inc.*, 99 F.3d 1145, 1996 WL 622755, at *1 (9th Cir. 1996) (table).

"Where injury to . . . a third party is caused by the negligent pilotage of the vessel . . . the vessel owner is liable *in personam* (and the vessel is liable *in rem*) where the pilotage is voluntary. The reason for this is that in both cases the owner takes on the pilot as his servant. The voluntary pilot is called the 'loaned employee' or 'borrowed servant' of the vessel." 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 13-6 (4th ed. Westlaw 2010). The Fifth Circuit has established a nine-part test for determining borrowed employee status:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work was being performed?
>
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employee?
>
> (4) Did the employee acquiesce in the new work situation?
>
> (5) Did the original employer terminate his relationship with the employee?
>
> (6) Who furnished tools and place for performance?
>
> (7) Was the new employment over a considerable length of time?
>
> (8) Who had the right to discharge the employee?
>
> (9) Who had the obligation to pay the employee?

*Owen v. Chevron U.S.A., Inc.*, 8 F.3d 20, 1993 WL 455547, at *2 (5th Cir. 1993) (table).

**B. Analysis**

Berryco asserts that the following evidence establishes that Captain Turrentine was an independent contractor and neither an employee nor borrowed employee:

- Captain Turrentine did not sign an employment or other contract with Berryco;

- Berryco only "advised" Captain Turrentine to transport workers, including the plaintiffs, and had no control over "the ways in which he performed his duties";

- Captain Turrentine could choose any available Berryco vessel to transport workers such as the plaintiffs and could take any route;

- Berryco's general manager, Josh Vaughn, testified that once Berryco charters a vessel to a third party, the vessel's captain takes instructions from the party chartering the vessel;

- Captain Turrentine "was never given any Berryco handbooks or guidelines to follow . . . and he never received any training from Berryco";

- Captain Turrentine "never considered himself to be a full-time employee of Berryco, and was free to work for other companies while he was hired by Berryco";

- Berryco paid a company called Steve's Marine, which Captain Turrentine used to provide his pilot services, not Captain Turrentine personally, for his services as a pilot;

- Captain Turrentine was issued a Form 1099 for his work and Berryco did not withhold income tax from his paychecks;

- Captain Turrentine was not a part of a Berryco 401(k) plan or given other employee benefits; and

- Berryco did not provide Captain Turrentine with room and board.

(Docket Entry No. 77, at 6–7).

The plaintiffs and cross-claimants respond that while the evidence may demonstrate that under traditional agency principles, Captain Turrentine was an independent contractor, the application of those principles is different in maritime law. The plaintiffs and cross-claimants argue

that under maritime law, Captain Turrentine is Berryco's employee or borrowed servant because Berryco did not bareboat charter the M/V NIKKI D to Duphil. *See Webb*, 397 U.S. at 192 ( "[E]xcept where there is nearly total relinquishment of control through a bareboat, or demise, charter, the owner may nevertheless be considered, under maritime law, to have sufficient control to be charged with the duties of an employer."). The plaintiffs and cross-claimants argue that the following evidence demonstrates a fact issue as to whether Captain Turrentine was an employee or borrowed servant of Berryco:

- Berryco hired Captain Turrentine as a pilot to fulfill Berryco's obligations under its agreement with Duphil and Brammer Engineering to transport workers, including the plaintiffs, to the drill site, (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 9–11; Ex. B, Josh Vaughn Depo., 38–39);

- Berryco provided a vessel equipped with tools to Captain Turrentine, (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 10–11);

- Captain Turrentine testified that when he worked for Berryco, he did not work for anyone else, (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 122–23);

- Berryco paid Captain Turrentine through his personal corporation, Steve's Marine, (*id.*); and

- Berryco's general manager, Josh Vaughn, testified that he replaced Captain Turrentine after the allision, (Docket Entry No. 99, Ex. B, Josh Vaughn Depo., 24–25).

Assuming, but not deciding, that Captain Turrentine was not Berryco's employee, Berryco could still be liable for his negligence if he was a borrowed servant. Berryco agrees that it did not bareboat charter the M/V NIKKI D to Duphil or Brammer Engineering. The absence of a bareboat charter is evidence that Berryco did not relinquish control of the M/V NIKKI D to Duphil or to Captain Turrentine and that Berryco retained some control. *Webb*, 397 U.S. at 192; *Dobrydnia*, 99 F.3d 1145, 1996 WL 622755, at *1. In addition to the absence of a bareboat charter, the evidence that Berryco hired Captain Turrentine, instructed Captain Turrentine to transport the plaintiffs to the

7

drilling site, provided Captain Turrentine with a vessel equipped with the necessary tools to complete the transport, paid Captain Turrentine through Steve's Marine, and replaced Captain Turrentine after the allision, and the conflicting evidence submitted by Berryco, give rise to a fact issue as to whether he was Berryco's borrowed servant. The record precludes summary judgment on the basis that Captain Turrentine was neither an employee nor a borrowed servant.

### III. Whether Berryco Is Entitled to Summary Judgment On the Ground That It Lacked Knowledge and Privity

Berryco argues that to the extent it is liable for Captain Turrentine's negligence, its liability is limited under the Limitation of Liability Act (the "Limitation Act"), 46 U.S.C. §§ 30501–30512, because the plaintiffs' injuries occurred without its privity or knowledge. The Limitation Act "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 439 (2001).

#### A. The Applicable Legal Standard

Courts use a two-part analysis to determine whether the vessel owner is entitled to a limitation of liability. *See Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). First, a court must decide whether the vessel owner's negligence or the vessel's conditions of unseaworthiness caused the accident. *Id.* On this question, the claimant bears the burden of proof. *Id.* If the claimant meets this burden, the court must then determine the vessel owner's knowledge of or privity to the acts of negligence or conditions of unseaworthiness that caused the accident. *Id.* The vessel owner bears the burden of proof on this "privity or knowledge" question. *Id.*

#### B. Analysis

8

In the responses to Berryco's summary judgment motion, the plaintiffs and cross-claimants argue that Berryco had the requisite notice and privity as to the following instances of negligence: "an allegedly malfunctioning radar, lack of navigational charts, Captain Turrentine's alleged intoxication while operating the M/V NIKKI D and Berryco's associated alleged failure to perform background checks . . . , Berryco's alleged failure to train the boat captains, the lack of safety policies or manuals, the alleged unsafe manner in which Captain Turrentine operated the M/V NIKKI D at the time of the incident, and the 'setup' of the spotlights on the M/V NIKKI D." The plaintiffs and cross-claimants do not argue that any of these negligent acts independently caused the allision. Instead, the plaintiffs and cross-claimants argue that Captain Turrentine negligently piloted the vessel and that his negligence can be attributed to Berryco.

The plaintiffs and cross-claimants have submitted evidence supporting these liability theories. There is record evidence that Captain Turrentine unsafely navigated the M/V NIKKI D. Limon testified that the vessel was swerving and did not have its lights on. (Docket Entry No. 99, Ex. D, Limon Depo., 61–63). Olivarez testified that Captain Turrentine piloted the vessel "full throttle," even though he was navigating at night. (Docket Entry No. 99, Ex. E, Olivarez Depo., 74–75). Olivarez and Limon also both testified that Captain Turrentine was drinking. (Docket Entry No. 99, Ex. D, Limon Depo., 61–63, 66; Ex. E, Olivarez Depo., 74–75). Berryco points out that before hiring Captain Turrentine, Berryco required a drug screen and physical, ensured that Turrentine had a captain's license, and required him to demonstrate his navigational ability to another licensed captain. (Docket Entry No. 100, Ex. F, John Vaughn Depo., 80–82). Berryco asserts that because it took these precautions, it cannot be held liable for Captain Turrentine's navigation. The plaintiffs and cross-claimants respond that the manner in which Captain Turrentine later piloted the vessel shows that Berryco's inquiry into his competence was insufficient. The

plaintiffs and cross- claimants also point out that Berryco failed to investigate whether Captain Turrentine had been involved in serious marine accidents and failed to provide him with safety training or a safety manual. (Docket Entry No. 99, Ex. B, Josh Vaughn Depo., 84–85, 102).

There is also evidence that Berryco's failure: (1) to provide a map of Sabine Lake; (2) to ensure that the M/V NIKKI D's radar functioned; and (3) to train Captain Turrentine to use the radar also contributed to the allision.[4] Berryco's general manager, Josh Vaughn, admitted during his deposition that he did not check the M/V NIKKI D's radar before allowing Captain Turrentine to pilot the vessel; did not check whether the vessel had navigational charts; and did not train Captain Turrentine on using the M/V NIKKI D's radar.[5] (Docket Entry No. 99, Ex. B, Josh Vaughn Depo., 73–75, 102). Navigation Chart 11342 for Sabine Lake, which the plaintiffs and cross-claimants assert should have been provided to Captain Turrentine, has a note stating that "[n]umerous uncharted gas and oil well structures . . . exist within Sabine Lake."[6] (Docket Entry No. 96, Ex. D). Berryco points out that Captain Turrentine had navigated Sabine Lake the week before the allision,

---

[4] The plaintiffs and cross-claimants also argue that Captain Turrentine's testimony shows that "the spotlight on the vessel was set up in a way that would not allow the operator to see with it; thus, this operator did not use it, and was not using it at the time of the incident." (Docket Entry No. 99, at 11). Captain Turrentine did not testify that the spotlight on the vessel was set up in a way that did not allow him to use it; he testified that he does not use spotlights because they can create a glare and because he can see better at night without them. (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 69–72).

[5] "If the shipowner is a corporation, knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss." *In re Hellenic, Inc.*, 252 F.3d 391, 394 (5th Cir. 2001) (internal quotations omitted); *see also* SCHOENBAUM, *supra*, § 15-7 ("Privity and knowledge exist where the owner has actual knowledge, or could have and should have obtained the necessary information by reasonable inquiry or inspection."). Berryco does not dispute whether Vaughn's knowledge is imputed to it.

[6] Berryco objects that Navigation Chart 11342 is inadmissible hearsay. The chart is produced and distributed by the National Oceanic and Atmospheric Administration pursuant to 33 U.S.C. § 883a, *et seq.* It is admissible as a public record. FED. R. EV. 803(8). Berryco also objected to the plaintiffs' use of Berryco's expert report on the basis that it was not sworn or verified. This court did not consider the expert report, making the objection moot.

and that a map would not have provided additional help. There was also evidence that the M/V NIKKI D's radar was not functioning properly, either because it was not working correctly or because Captain Turrentine did not know how to operate it. Captain Turrentine testified that the land, platform, and barge appeared as "one solid blob" on the radar. (Docket Entry No. 100, Ex. E, Captain Turrentine Depo., 80) Captain Turrentine thought the radar did not show the barge and platform because a GPS plotter interfered with the radar signal. He testified further that if the radar had been working, it would have shown the barge and the platform the M/V NIKKI D struck. (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 58–59). Vaughn testified that he had been informed before the accident that the GPS plotter interfered with the radar. Vaughn could not recall when he had been given this information. (Docket Entry No. 100, Ex F, Vaughn Depo., 42). There was also testimony from two captains who had previously piloted the M/V NIKKI D that they had not encountered a problem with the GPS interfering with the radar. (Docket Entry No. 100, Ex. G, Mike Dennis Depo., 72; Ex. D, David Oliver Depo., 25–26). Berryco points out that Captain Turrentine did not have a radar operator's endorsement on his Coast Guard License and that his opinion about whether the radar had been working or what might interfere with it may be speculation. (Docket Entry No. 100, at 16). Berryco also points to evidence that the GPS system functioned properly.

The notice/privity issue is whether Berryco knew or should have known of "the conditions or actions likely to cause the loss." *Hellenic*, 252 F.3d at 394. Generally, "errors in navigation . . . are not attributable to [the owner] on *respondeat superior* for limitations purposes." *In re Kristie Leigh Enters.*, 72 F.3d 479, 482 (5th Cir. 1996). But courts have found that owners may nonetheless be held liable for a captain's negligent navigation of a vessel when the owner's negligence contributed to navigational errors. *See, e.g.*, *Hercules Carriers, Inc. v. Florida*, 768 F.2d 1558,

1563 (11th Cir. 1985) (finding that the master's negligence in allowing pilot to maintain a speed of thirteen knots when visibility was less than 500 feet, the captain's negligence in failing to post a full-time lookout and to use proper turnover procedures, and the shipowner's failure to provide an adequate training program for the crew substantiated a finding of privity and knowledge on the part of the vessel owner).

Two Fifth Circuits clarify the circumstances under which an owner may be liable for the captain's negligent navigation. In *In re Kristie Leigh Enterprises*, 72 F.3d 479 (5th Cir. 1996), the Fifth Circuit overturned a district court's finding that a tug owner was not entitled to a limitation of liability. The tug was towing three barges. The tug's captain arranged the barges side-by-side to navigate rough waters. The barges later collided with a recreational fishing boat. The district court had found that the captain was negligent, but not incompetent, because he: (1) violated Inland Navigation Rules in arranging the barges; (2) failed to post a lookout; and (3) failed to sound a danger signal to warn the fishing boats to take evasive action. The district court denied the tug owner liability limitation because: (1) the owner–corporation did not have expertise to determine whether the ship masters they employed acted reasonably; (2) the owner–corporation made no efforts to ensure compliance with Inland Navigation Rules; and (3) the owner–corporation failed to hold safety meetings, enact safety policies, or inquire into their captains' operational decisions. *Id.* at 480–81. The Fifth Circuit reversed. The court noted that navigational errors are not attributable to vessel owners; there was no evidence that the owner–corporation had "knowledge that [the captain] was unsafe"; and the record did not suggest that the captain needed additional training or instruction in performing his duties. *Id.* at 482. In *Trico Marine Assets, Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779 (5th Cir. 2003), the Fifth Circuit clarified that *Kristie Leigh* does not exonerate owners from all negligence by captains. In *Trico*, Texaco employees were injured when

the MISS BERNICE—a vessel charted by Texaco from Diamond B Marine Services to transport the plaintiffs to Venice, Louisiana—collided with another vessel. The evidence showed that: (1) the captain departed without a lookout and without turning on his running lights; (2) Diamond B failed to instruct the captain on how to use the MISS BERNICE's radar and the captain misinterpreted the position of the vessel he struck; (3) the captain piloted the vessel at full speed; (4) the vessel's engine was excessively noisy and prevented the captain from hearing; (5) Diamond B failed to evaluate the captain's competence; and (6) Diamond B failed to provide safety or training manuals. *Id.* at 783–84, 790. The Fifth Circuit upheld the district court's denial of Diamond B's request to limit its liability. The court rejected Diamond B's argument that the evidence showed only "a 'hands-off' approach to management, which it [claimed was] permissible under *Kristie Leigh*." *Id.* at 790. Noting that Diamond B sent the captain out in fog without a lookout, without training in using the radar, and with an excessively noisy engine, the court concluded that the facts showed "far more than mere navigational errors." *Id.*

In the present case, like *Trico Marine* but unlike *Kristie Leigh*, the plaintiffs and cross-claimants have produced evidence of more than "mere navigational errors." *Trico Marine*, 332 F.3d at 790. The record included evidence showing that Berryco sent Captain Turrentine out at night with radar that could malfunction if used with the GPS system or that Captain Turrentine did not know how to use, and without a navigational map that would have alerted him to numerous obstacles in Sabine Lake. Captain Turrentine testified that had the radar functioned, he would have detected the barge and the platform and could have avoided the allision. The record also contains evidence that Berryco conducted a minimal investigation into Captain Turrentine's competence, and that he piloted the vessel at full speed and without lights while consuming alcohol. Unlike the facts in *Kristie Leigh*, there are disputed issues in this case as to whether Captain Turrentine was

13

competent and as to whether Berryco reasonably investigated his qualifications. Finally, there is evidence showing that like the vessel owner in *Trico*, Berryco made no effort—either through training or through manuals—to ensure that Captain Turrentine was trained in the safe operation of Berryco's vessels. *See Borque*, 525 F. Supp. 2d at 848 ("[T]he owner's failure to provide an adequate program to train the crew may, by itself, allow for a finding of privity or knowledge."). The plaintiffs and cross- claimants have shown a sufficient factual basis to support an inference of Berryco's knowledge or privity as to Captain Turrentine's negligence.

Berryco argues that, assuming the radar malfunctioned, it was Captain Turrentine's duty to report the malfunction to Vaughn because Berryco usually relies on its captains to report such malfunctions. The evidence shows that Captain Turrentine had no knowledge of the radar malfunction until he left port. Even assuming that Captain Turrentine knew about the radar malfunction earlier but did not report it to Vaughn, "[a] shipowner's duty to provide a seaworthy vessel is absolute and nondelegable." *Savarese v. Pearl River Navigation, LLC*, Civ. A. No. 09-129, 2010 WL 3720907, at *8 (E.D. La. Sept. 14, 2010) (citing *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991)) As in *Trico Marine*, Berryco, the vessel owner may be liable for an unseaworthy vessel for failing to train a captain to use a radar or for defective radar if the radar's failure caused the accident. 332 F.3d at 790 (upholding the district court's denial of liability limitation because the captain was not trained to use the vessel's radar). By contrast, courts have held that if the captain knew how to use radar effectively but misused it, the vessel owner is entitled to liability limitation because this is a mere navigational error. *In re MO Barge Lines, Inc.*, 360 F.3d 885, 892 (8th Cir. 2004) (finding that the vessel owner was entitled to liability limitation for an accident caused by a captain's erroneous belief that a "mass of lights" was a construction site and not a vessel and subsequent misjudgment not to increase the radar's range to track the mass of lights

because the evidence supported a finding that the captain's "decision not to increase his radar's range when he first noticed the lights was navigational error rather than an example of unseaworthiness"). In this case, the record contains conflicting evidence as to whether the radar was operating properly or whether Captain Turrentine was either untrained or improperly trained in its use. (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 58–59).

An owner is also entitled to liability limitation if a functioning radar would not have prevented the accident. *In re Omega Protein, Inc.*, 548 F.3d 361 (5th Cir. 2008) (finding that the owner was entitled to liability limitation because even if the captain had used the radar, the evidence showed that it would not have prevented the accident). Captain Turrentine testified that he was not aware the radar on the vessel malfunctioned when used in conjunction with the GPS system until he had left port. He also testified that had the radar worked properly, he would have seen the barge and would have been able to avoid the allision. (Docket Entry No. 99, Ex. A, Captain Turrentine Depo., 58–59). Vaughn also testified that he knew that the GPS system could interfere with the radar. There is no evidence that Vaughn informed Captain Turrentine about this problem or that Vaughn inspected the radar. Under the applicable precedent, this provides a basis to deny Berryco summary judgment that it is entitled to the limitation of liability it seeks.

## IV. Conclusion

Berryco's motion for summary judgment, (Docket Entry No. 77), is denied.[7]

SIGNED on April 12, 2011, at Houston, Texas.

_____
Lee H. Rosenthal

---

[7] Liberty Mutual Fire Insurance objected to the affidavits of Darla Perry and Danny Perry attached to Berryco's motion for summary judgment. This court considered that evidence and it does not affect this ruling. The objection is denied as moot.

United States District Judge